UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re:   THE VAUGHAN COMPANY, REALTORS,            No. 11-10-10759 JA

    Debtor.

JUDITH A. WAGNER, Chapter
11 Trustee of the bankruptcy estate
Of the Vaughan Company, Realtors,

    Plaintiff,

v.                                              Adversary No. 12-1109 J

PETER McANENA and
SARAH BLACKWOOD,

    Defendants.

## MEMORANDUM OPINION

THIS MATTER is before the Court on two motions for summary judgment filed by Plaintiff Judith A. Wagner, Chapter 11 Trustee of the bankruptcy estate of the Vaughan Company Realtors (the "Trustee") against Defendant Peter McAnena.[1] The Trustee seeks judgment in her favor on her claims under 11 U.S.C. § 547 and 548 of the Bankruptcy Code and under New Mexico's version of the Uniform Fraudulent Transfer Act ("UFTA"), N.M.S.A. 1978 §§ 56-10-18(A)(1) and (2). Specifically, the Trustee requests the Court to i) establish the timing and amount of the transfers made by The Vaughan Company Realtors ("VCR") to Mr. McAnena; ii) enter a money judgment in favor of the Trustee with respect to the "net winnings" Mr. McAnena received in excess of his total investment during the two-year and four-year look back periods under 11 U.S.C. § 548 and the UFTA; iii) declare that the Trustee has proven her

---

[1] *See* Plaintiff's Motion for Partial Summary Judgment on her Claims Under 11 U.S.C. § 547 Against Defendant Peter McAnena (Docket No. 34) (the "§ 547 Motion") and Chapter 11 Trustee's Motion for Partial Judgment Against Peter McAnena as to the Timing and Amount of the Transfers (Docket No. 32) (the "Fraudulent Transfer Motion").

prima facie case against Mr. McAnena on her actual fraud claims brought under 11 U.S.C. § 548 and the UFTA, and, if appropriate, enter a money judgment on those claims; and iv) enter a money judgment in favor of the Trustee for the amount of the transfers from VCR to Mr. McAnena made during the 90-day period before VCR's filing of its bankruptcy petition. Mr. McAnena did not file a response to the Motions for Summary Judgment. After considering the Motions for Summary Judgment and the supporting documentation, and being otherwise sufficiently informed, the Court finds that the § 547 Motion should be denied and the Fraudulent Transfer Motion should be granted, in part, and denied in part, as explained below.

## SUMMARY JUDGMENT STANDARDS

Summary judgment, governed by Rule 56, Fed.R.Civ.P., will be granted when the movant demonstrates that there is no genuine dispute as to a material fact and that the movant is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(a), made applicable to adversary proceedings by Rule 7056, Fed.R.Bankr.P. "[A] party seeking summary judgment always bears the initial responsibility of informing the ... court of the basis for its motion, and ... [must] demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In considering a motion for summary judgment, the Court must "examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment." *Wolf v. Prudential Ins. Co. of America*, 50 F.3d 793, 796 (10th Cir. 1995) (quoting *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F2d 1238, 1241 (10th Cir. 1990)). "[A] party opposing a properly supported motion for summary judgment may not rest on mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial" through

affidavits or other supporting evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed .2d 202 (1986).

## FACTS NOT SUBJECT TO GENUINE DISPUTE

1. VCR filed a voluntary petition under Chapter 11 of the Bankruptcy Code on February 22, 2010 (the "Petition Date"). *See* Docket No. 1 in Case No. 10-10759.

2. The Trustee commenced this adversary proceeding on February 19, 2012. *See* Trustee's Complaint, Docket No. 1.

3. Peter McAnena transferred a total of $290,000.00 to VCR between 1999 and the Petition Date. *See* Complaint, ¶ 30 (chart showing that Mr. McAnena invested a total of $290,000 from 1999 through the Petition Date); [Answers to] Plaintiff's First Request for Admissions, Interrogatories and Requests for Production to Defendant Peter McAnena ("Discovery Responses") – Request for Admission No. 1.[2]

4. From 1999 through the Petition Date, Peter McAnena received $387,818.04 from VCR. *See* Complaint, ¶ 32; Discovery Responses – Request for Admission No. 2.

5. From February 22, 2006 through the Petition Date, Peter McAnena received $212,326.07 from VCR. *See* Complaint, ¶ 34; Discovery Responses – Request for Admission No. 3.

6. From February 22, 2008 through the Petition Date, Peter McAnena received $103,945.49 from VCR. *See* Complaint, ¶ 35; Discovery Responses – Request for Admission No. 4.

---

[2]Mr. McAnena admits the Trustee's request to admit that the total amount he transferred to VCR from 1999 through the Petition date is $290,000.00, but indicated in his Discovery Responses that he was "relying on information from 'your office' as I no longer have those documents." *See* Discovery Responses, Request for Admission No. 1. Mr. McAnena reiterated this qualification in admitting Requests for Admission Nos. 2, 3, 4, 5, 6, and 7 upon which the Trustee relies in support of the § 547 Motion and the Fraudulent Transfer Motion.

3

7. Peter McAnena received from VCR $97,818.04 more than he invested. *See* Complaint, ¶ 33; Discovery Responses – Request for Admission No. 7.

8. Within the 90-day period before the Petition Date, Peter McAnena received $13,661.41in transfers from VCR. *See* Complaint, ¶ 36; Discovery Responses – Request for Admission No. 5.

9. The transfers Peter McAnena received from VCR were on account of his participation in VCR's promissory note program. *See* Complaint, ¶¶ 30 and 41; Discovery Responses – Request for Admission No. 6.

## DISCUSSION

*I. Whether the Trustee Established the Prima Facie Elements of her Actual Fraud Claims*

Claims for actual fraud under 11 U.S.C. § 548(a)(1)(A) require a proof of "(i) a transfer of an interest of the debtor in property; (ii) made within two years before the debtor filed for bankruptcy; and (iii) done with 'actual intent to hinder, delay, or defraud' the debtor or any entity the debtor would become after the transfer." *See McHale v. Boulder Capital LLC (In re The 1031 Tax Group, LLC)*, 439 B.R. 47, 68 (Bankr.S.D.N.Y. 2010) (quoting 11 U.S.C. § 548(a)(1)(A)). The UFTA contains similar elements but uses a four-year look-back period. *See* N.M.S.A. 1978 § 56-10-18(A)(1)(actual fraud)[3]; N.M.S.A. 1978 § 56-10-23 (establishing a four year statute of limitations on pursuing fraudulent transfer actions under New Mexico law).[4] In *Wagner v. Oliva (In re Vaughan Co. Realtors),* 500 B.R. 778 (Bankr.D.N.M. 2013) this Court

---

[3]The New Mexico statute provides:
    A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
        (1) with actual intent to hinder, delay or defraud any creditor of the debtor[.]
N.M.S.A. 1978 § 56-10-18(A)(1).

[4]*Montoya v. Velasquez (In re Strom)*, 2013 WL 265071, *3 n. 5 (Bankr.D.N.M. Jan. 10, 2013) ("The New Mexico UFTA has a four-year 'look-back' period[.]").

4

determined that, to the extent a transfer was made to an investor in VCR's promissory note program within the four-year period before the Petition Date: (1) each transfer constituted an interest of VCR in property; (2) each transfer was made with the actual intent to defraud creditors; (3) VCR received less than reasonably equivalent value in exchange for the transfer of any returns in excess of the original investment; and (4) on the date of each transfer, VCR was insolvent and/or believed (or reasonably should have believed) it would incur debts beyond its ability to repay.[5] The only remaining issues are whether, and to what extent, the transfers actually occurred, and Mr. McAnena's good faith defense.

The facts not subject to material dispute establish the timing and amount of the transfers with respect to the Trustee's actual fraud claims. From February 22, 2006 through the Petition Date, Mr. McAnena admits that he received $212,326.07 from VCR. From February 22, 2008 through the Petition Date, Mr. McAnena admits that he received $103,945.49 from VCR.

Under the actual fraud provision of 11 U.S.C. § 548(a)(1)(A), the Trustee may recover the total amount of the transfers, not just the amount in excess of an investor's initial investment, unless the investor can show that he received the transfer in good faith in exchange for value. *See* 11 U.S.C. § 548(c)("a transferee . . . of such transfer . . . that takes for value and in good faith . . . may retain any interest transferred . . . to the extent that such transferee . . . gave value to the debtor in exchange for such transfer."); *Soifer v. Bozarth (In re Lydia Cladek, Inc.),* 494 B.R. 555, 557 (Bankr.M.D.Fla. 2013)(stating that § 548(c) "provide[s] transferees with a defense to fraudulent transfer actions based on actual fraud, if the transferees gave value in exchange for the transfers and acted in good faith."); *Fisher v. Sellis (In re Lake States Commodities, Inc.),* 253 B.R. 866, 879 n.9 (Bankr.N.D.Ill. 2000)(stating that "a trustee may

---

[5] *Wagner v. Oliva* established certain elements of the Trustee's prima facie fraudulent transfer claims with respect to each defendant in similarly-situated adversary proceedings involving investors in VCR's promissory note program, including the defendants in this Adversary Proceeding No. 12-1109.

5

recover the full amount of a transfer if the debtor made the transfer with actual intent to defraud. In that scenario, the transferee will only avoid liability if it can establish good faith . . .")(citation omitted). The UFTA also contains a good faith defense to fraudulent transfer claims. *See* N.M.S.A. 1978 § 56-10-22(A)("A transfer . . . is not voidable . . . against a person who took in good faith and for a reasonably equivalent value . . .").

  The Trustee points out that Mr. McAnena did not expressly raise any affirmative defenses. He did not respond to the Motions for Summary Judgment. Defendant Sarah Blackwood is the only Defendant who signed the Answer to the Complaint, though the Answer contains separate responses for each Defendant. *See* Docket No. 26. In the Pre-Trial Order, Defendants state that whether they knew or should have known that Douglas Vaughan was causing VCR to engage in fraud should be measured by the standard of "a reasonably prudent person of same or similar class of persons" as the Defendants; that the Defendants did not recognize that VCR's promissory note program was a Ponzi scheme when they made their investments, and that they are "victims, not perpetrators [of the fraud]." *See* Pre-Trial Order, pp.6 and 16 –Docket No. 37. Even though Mr. McAnena did not expressly assert the good faith defense to the Trustee's claims, the Court finds that it is not appropriate to grant the Trustee a money judgment for the total amount of the transfers.[6] The Pre-Trial Order and the Answer

---

[6]Mr. McAnena bears the burden of proof with respect to the good faith defense. *See Satriale v. Key Bank USA, N.A. (In re Burry),* 309 B.R. 130, 135 (Bankr.E.D.Pa. 2004)(observing that, because the good faith defense is an affirmative defense, the defendant bears the burden of proof). When the party requesting summary judgment does not bear the burden of proof with respect to an issue for trial, the moving party can satisfy its burden of demonstrating an absence of genuine issue of material fact by (1) presenting evidence to negate an essential element of the nonmovant's claim or defense; or (2) "indicating to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *1-800 Contacts, Inc. v. Lens.com, Inc.,* 722 F.3d 1229, 1242 (10th Cir. 2013)(quoting *Sally Beauty Co., Inc.,* 304 F.3d 964, 971 (10th Cir. 2002)(internal quotation marks omitted)). The Trustee's argument that Mr. McAnena did not make a sufficient showing with respect to an affirmative defense ordinarily would trigger Mr. McAnena's duty to come forward with evidence regarding his defenses sufficient to defeat the Trustee's request for summary judgment. But the Court nevertheless may exercise its discretion consistent with Rule 56 and decline to grant summary judgment. *See In re Curtis,* 38 B.R. 364, 368 (Bankr.Okla. 1983)("even where movant's showing appears sufficient, a judge has some discretion to *deny* the motion notwithstanding the technically adequate showing in support thereof.")(emphasis in original)(citation omitted);

include statements that Mr. McAnena did not know that VCR was operating a Ponzi scheme at the time of his investment or when he received the transfers, and that he "believed in and trusted [Douglas] Vaughan for a long time." *See* Answer, p. 10 – Docket No. 26. These statements are sufficient for the Court to exercise its discretion under Rule 56 and decline to enter a money judgment for the total amount of the transfers during the two- and four-year look-back periods notwithstanding the Trustee's establishment of the timing and amount of the transfers comprising her actual fraud claims. *See* 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, <u>Federal Practice and Procedure: Civil</u> § 2728 (3d ed. 1998)("the court has discretion to deny a Rule 56 motion . . . . when it has any doubts as to the wisdom of terminating the action prior to a full trial."). A trial on the merits of this Adversary Proceeding is scheduled for November 17, 2014. Mr. McAnena will have an opportunity at that time to present evidence of good faith.

    II.    *Whether the Trustee is Entitled to a Money Judgment for "Net Winnings"*

The Trustee also seeks summary judgment on her constructive fraud claims. Constructive fraud under 11 U.S.C. § 548(a)(1)(B) requires the plaintiff to establish that the debtor "received less than a reasonably equivalent value in exchange for the transfer." 11 U.S.C. § 548(a)(1)(B)(i). The constructive fraud provisions of the UFTA contain a similar requirement.[7] Whether the debtor received reasonably equivalent value in exchange for a transfer in Ponzi scheme cases depends on whether the investor had already recouped their initial investment at the time of the transfer. As the Court explained more fully in *Wagner v. Oliva,* to

---

*Lyons v. Hospitality of Vermont, Inc., (In re Hospitality of Vermont, Inc.),* 27 B.R. 737, 739 (Bankr.Vt. 1983)("Even if it were assumed that the instant parties had satisfied the criteria for summary judgment, 'the Court may deny summary judgment as a matter of discretion.'")(quoting *Fine v. City of New York,* 71 F.R.D. 374, 375 (S.D.N.Y. 1976)). In this case, the Court exercises its discretion to not grant summary judgment on the good faith defense notwithstanding Mr. McAnena's failure to come forward with evidence to support the defense in response to the Trustee's request for summary judgment.

[7] N.M.S.A. 1978 §§ 56-10-18(A)(2) and 56-10-19(A) require that the debtor make a transfer "without receiving a reasonably equivalent value in exchange for the transfer."

7

the extent the transfer at issue represents a return of principal, the Ponzi perpetrator receives reasonably equivalent value as a matter of law. *Wagner v. Oliva,* 500 B.R. at 793-794.[8]

For both constructive fraud claims and actual fraud claims in Ponzi scheme cases, courts generally apply the "netting rule" to determine the amount of the potential liability of the transferee. Under the netting rule, the "[a]mounts transferred by the Ponzi scheme perpetrator to the investor are netted against the [total] amounts invested by that individual." *Donell v. Kowell,* 533 F.3d 762, 771 (9th Cir. 2008). "The actual amount of liability depends 'on factors such as whether transfers were made within the limitations period[.]'" *Wagner v. Eberhard (In re Vaughan Company, Realtors),* 2014 WL 271632, *4 (Bankr.D.N.M. Jan. 23, 2014) (quoting *Donell,* 533 F.3d at 771).

Mr. McAnena admits that he received $97,818.04 in excess of the total amount he invested in VCR's promissory note program. He also admits that he received $212,326.07 from VCR during the four-year look-back period, and $103,945.49 during the two-year look-back period. Because the amount of the net winnings is less than the amounts Mr. McAnena received during the look-back periods, Mr. McAnena necessarily received the net winnings during the applicable look-back period.

In sum, the Trustee has established all required elements of her claims to recover payments in excess of Mr. McAnena's initial investment under both the actual and constructive fraud provisions of 11 U.S.C. §§ 548(a)(1)(A) and (B) and N.M.S.A. 1978 § 56-10-18(A)(1) and (2). The good faith defense can only protect Mr. McAnena to the extent of his original

---

[8] *See also Jobin v. McKay (In re M & L Business Machine Co.),* 84 F.3d 1330, 1341 (10th Cir.1996) (explaining that "investors in fraudulent schemes ha[ve] claims for restitution and rescission against the debtor [Ponzi perpetrator] and that, by reducing the amount of these claims, the debtors' payments provided reasonably equivalent value.")(citations omitted); *Merrill v. Abbott (In re Independent Clearing House Co.)*, 77 B.R. 843, 857 (D.Utah 1987) (holding that the a Ponzi perpetrator received reasonably equivalent value as a matter of law for any transfers up to the amount of the investor's initial investment).

investment. And the Trustee's recovery on her constructive fraud claims is limited to the amount transferred in excess of the amount VCR received. The Trustee is therefore entitled to judgment in her favor in the amount of $97,818.04 (*i.e.* the total amount of net winnings transferred to Mr. McAnena by VCR during the four-year look-back period), plus post-judgment interest at the federal judgment rate.

> III.     *Whether the Trustee is Entitled to a Money Judgment on her Preferential Transfer Claim under 11 U.S.C. § 547*

Preferential transfers are governed by 11 U.S.C. § 547(b), which provides, in relevant part:

[T]he trustee may avoid any transfer of an interest of the debtor in property-

> (1) to or for the benefit of a creditor;
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
> (3) made while the debtor was insolvent;
> (4) made-(A) on or within 90 days before the date of the filing of the petition;
> (5) that enables such creditor to receive more than such creditor would receive if-
>> (A) the case were a case under chapter 7 of this title;
>> (B) the transfer had not been made; and
>> (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b).

In *Wagner v. Valencia (In re Vaughan Company, Realtors),* 2013 WL 5818766 (Bankr.D.N.M. Oct. 25, 2013)*,* this Court found that the Trustee has established that VCR had an interest in the funds transferred to Mr. McAnena as part of VCR's promissory note program, and that VCR was insolvent between at least January 1, 2005 and the Petition Date. *See Wagner v. Valencia,* 2013 WL 5818766 at *6 (incorporating the Court's companion decision in *Wagner v. Oliva* for purposes of establishing some of the elements required for the Trustee's preferential transfer claims). With respect to 11 U.S.C. § 547's requirement that the transfers be made on

9

account of an antecedent debt (i.e., to a "creditor"), the Court determined that further analysis was required as to Mr. McAnena. *See Wagner v. Valencia,* 2013 WL 5818766 at *8. If Mr. McAnena received only net winnings during the 90-day period prior to the Petition Date, such transfers "would not be avoidable as preferential transfers because at that point, VCR had no obligation to pay those funds." *Id.* Consequently, Mr. McAnena would not be a "creditor" with a claim against the estate at the time of the alleged preferential transfers. *Id.* (explaining that for preferential transfer claims, "an investor ceases to be a 'creditor' of the Ponzi perpetrator at the moment the investor recovers the amount of the initial investment.").

The facts not subject to genuine, material dispute establish that VCR transferred $13,661.41 to Mr. McAnena during the 90-day period before the Petition Date. But because the 90-day period is a subset of the four-year and two-year look-back period applicable to the Trustee's fraudulent transfer claims, the amount of the preferential transfer is necessarily a part of the net winnings. Consequently, the Trustee cannot prevail on her preferential transfer claim against Mr. McAnena because the transfers by VCR to Mr. McAnena during the 90-day period before the Petition Date were not made on account of an antecedent debt. Mr. McAnena had already recovered the total amount of his investment in VCR's promissory note program at the time of the alleged preferential transfers.

## CONCLUSION

Based on the foregoing, the Court concludes that the Trustee is entitled to a money judgment for the "net winnings" transferred §by VCR to Mr. McAnena on account of his investment in VCR's promissory note program during the applicable look-back periods. The Court will not grant the Trustee summary judgment for the full amount of the transfers made during the applicable look-back periods, notwithstanding the fact that the Trustee has established

10

all prima facie elements of her actual fraud claims. At trial, Mr. McAnena will have an opportunity to present evidence to support his good faith defense. The Trustee is not entitled to summary judgment on her preferential transfer claim under 11 U.S.C. § 547. The Court will enter a separate orders and judgments consistent with this memorandum opinion.

                                                 /s/ Robert H. Jacobvitz
                                                 ROBERT H. JACOBVITZ
                                                 United States Bankruptcy Judge

Date entered on docket: August 7, 2014

COPY TO:

| | |
|---|---|
| Edward Alexander Mazel | Peter McAnena |
| Daniel Andrew White | Defendant |
| Askew & Mazel, LLC | 45120 Hwy 79 #706 |
| Attorneys for Plaintiff | Aguanga, CA 92536 |
| 320 Gold Ave S.W., Suite 300A | |
| Albuquerque, NM 87102 | |

11